UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION<br><br>    Plaintiff,<br><br>v.<br><br>LEACHGARNER, INC. d/b/a "LEACHGARNER, A BERKSHIRE HATHAWAY COMPANY,<br><br>    Defendant. | Civil Action No. 1:23-cv-11014-JEK |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL DEFENDANT LEACH GARNER, INC. TO <u>PRODUCE DISCOVERY</u>**

The Equal Employment Opportunity Commission ("EEOC" or "the Commission") alleges that Defendants LeachGarner, Inc. ("LeachGarner" or "Defendant") engaged in a pattern or practice of systemic sex discrimination against women working at its factory in Attleboro, Massachusetts in violation of Title VII of the Civil Rights Act of 1964 ("Title VII").[1] Compl. ¶¶ 14-15. Specifically, EEOC brings two claims of systemic pay discrimination. First, the EEOC alleges that LeachGarner pays its female production workers less than male production workers because of their sex, despite its female production workers performing similar and comparable manufacturing work as its male production workers ("compensation claim"). *Id.* at ¶ 14. Second, the EEOC alleges that LeachGarner segregated its production jobs by sex, by making specific requests to staffing agencies for workers by sex, assigning women to lower-paying jobs and denying them opportunities to transfer to higher paying jobs ("job segregation claim"). *Id.* at ¶ 15. The complaint seeks relief for

---
[1] The EEOC also brings some individual claims under the Equal Pay Act ("EPA")

1

discrimination going back to January 1, 2017, and alleges that the illegal pattern or practice of discrimination is ongoing. *Id.* at 14 ("Since at least January 1, 2017 and continuing through the present . . . LeachGarner has engaged in . . . in a pattern or practice of paying female manufacturing employees less than male manufacturing employees despite such female manufacturing employees performing similar work.").

On October 11, 2023, the Court granted the EEOC's motion to bifurcate the proceedings for discovery and trial. ECF. No. 21. Pursuant to the Bifurcation Order, Phase I discovery is focused on the class-wide pattern or practice issues. *See id.*; ECF No. 22-1 at ¶ A.2.ii.

On November 8, 2023, the EEOC issued its first sets of Requests for Production and Interrogatories. Declaration of Sebastian Riccardi ("Riccardi Decl."), Ex. A, C. After almost three months and multiple meetings with LeachGarner's counsel, the EEOC has received only two documents—two incomplete Excel spreadsheets.[2] However, Defendant maintained that it had over 1,000 responsive documents in its possession that it intended to disclose nearly three weeks ago. Defendant has failed to produce these documents or provide a date when they actually do intend to produce these documents.

After three months with little progress, Defendant continues to obstruct and disregard discovery deadlines. LeachGarner has failed to provide the following:

- LeachGarner has refused to search for or produce any documents or information from before 2017 or after August 2023;
- LeachGarner has failed to search for or produce documents related to a "near identical" wage discrimination investigation by the Department of Labor;

---

[2] LeachGarner's counsel has agreed to request complete data from its client and the parties continue to work informally on the production of this data and, thus, the deficiencies in the data production are not a subject of this motion to compel

- LeachGarner has failed to search for or produce training materials and user manuals or other documents related to the operation of the machines used in its production process as requested in the EEOC's Request for Production No. 29;

- LeachGarner refused to answer Interrogatories 2, 5, and 9, which seek information regarding LeachGarner's organizational structure, pay practices, and a list of the staffing agencies from which LeachGarner obtains its employees;

- LeachGarner has failed to properly answer Interrogatory 6 regarding information about each of LeachGarner's production job titles and Interrogatory 7 which seeks a description of all of the factors other than sex that were used by LeachGarner to set pay.[3]

As set forth below, EEOC asks that this Court GRANT its motion to compel and order LeachGarner to produce the requested discovery within seven (7) days of the Court's order. Additionally, pursuant to Fed. R. Civ. P 37(a)(5)(A), the Court should award the EEOC reasonable attorney fees for making this motion. Finally, because of LeachGarner's unjustifiable delays in producing discovery, the EEOC requests that all discovery deadlines be extended by three additional months.

## I. BACKGROUND

### A. The Facts at Issue in the EEOC's Pattern or Practice Claim

The EEOC's complaint alleges a pattern or practice of discrimination under the standards set forth by the Supreme Court in *International Bhd. of Teamsters v. United States*, 431 U.S. 324, 336 (1977). Under the *Teamsters* framework "[p]attern-or-practice cases [] proceed in two phases:

---

[3] LeachGarner has also failed to produce payroll data from before February 24, 2020, and failed to provide all of the data fields requested in the EEOC's Request for Production No. 20, but it now appears to be working cooperatively with the EEOC to rectify these deficiencies.

3

a liability phase and a remedial phase." *Equal Emp. Opportunity Comm'n v. Texas Roadhouse, Inc.*, 215 F. Supp. 3d 140, 167 (D. Mass. 2016). Here, pursuant to this Court's order bifurcating discovery and trial based on the *Teamsters* framework, discovery in Phase I is focused on the class-wide pattern or practice issues. *See id*.; ECF No. 22-1 at ¶ A.2.ii.

In the "liability" phase of the *Teamsters* framework, "[t]he Plaintiff['s] . . . initial burden is to demonstrate that unlawful discrimination has been a regular procedure or policy followed by an employer." 431 U.S. at 360. This phase of the pattern or practice case is characterized by a "heavy reliance on statistical evidence." *Reynolds v. Barrett*, 685 F.3d 193, 203 (2d Cir.2012); *Texas Roadhouse*, 215 F.Supp.3d at 168. At the liability stage, the plaintiff typically relies "on statistical evidence aimed at establishing the defendant's past treatment of the protected group" and anecdotal evidence of specific instances of discrimination. *Robinson v. Metro-N. Commuter R.R. Co.*, 267 F.3d 147, 158 (2d Cir. 2001). However, the pattern or practice burden of establishing a policy of discrimination may be met using statistical evidence alone. *Hazelwood School Dist. v. United States*, 433 U.S. 299, 307-08 (1977). In opposition, the defendant may rebut a pattern or practice showing "by attacking the statistical evidence relied upon or otherwise producing non-statistical evidence to show that it lacked a discriminatory intent." *Texas Roadhouse,* 215 F.Supp.3d 1at 168

Here, the liability phase proof will revolve around the EEOC's statistical models of LeachGarner's employment processes and evidence regarding sex discrimination in hiring and assignments. In opposition to EEOC's compensation claim, LeachGarner has indicated that it will argue that different wages for each position is the result of job qualifications and working conditions, and that, due to more than 100 distinct and incomparable manufacturing job titles, a statistical comparison of male and female employees among these job titles would be improper. *See* ECF No.17 at 8 ("Because of the large number of distinct manufacturing roles at LeachGarner and the few employees in each role (explained in section III above), liability issues will concern

whether different work, qualifications, working environment, and pay are different or appropriate between the different roles."). As to job segregation, LeachGarner claims that rather than being assigned a position, employees are given free choice of any job within their qualifications, and, thus the pattern of job titles occupied by men and women at the Attleboro facility is the result of different qualifications and interests of the employees themselves. *Id.* at 9 ("As part of its defense, LeachGarner will show that it held manufacturing positions open to all applicants regardless of gender and that each individual applicant chose roles based on their interest and qualifications.").

Based upon these claims and defenses, among the basic facts at issue are:

- LeachGarner's practices for determining production employees' pay;
- Employees' actual pay;
- The different roles in LeachGarner's production process;
- The qualifications, skills, and experience required for each position in LeachGarner's production process;
- The work and working environment for each job in the production process;
- LeachGarner's hiring practices, including how workers are assigned to jobs; and
- LeachGarner's communications with the staffing agencies who fill the jobs at its Attleboro facility, including whether preferences for workers of a particular sex are ever expressed.

B. **The EEOC's Efforts to Obtain Discovery**

The EEOC has spent months attempting to obtain the requested discovery without court intervention. Defendant's constant refusal to comply with deadlines or communicate has frustrated that process and has necessitated the instant motion. The EEOC served its discovery requests on November 8, 2023, and responses were due 30 days later. *See* Fed. R. Civ. P. 33(b)(2) and 34(b)(2). LeachGarner did not request an extension of this time and did not respond to these

requests at all in the 30 days provided for in the Federal Rules. Riccardi Decl. ¶ 5.

In response to the EEOC's request to meet and confer pursuant to Local #ule 37.1, on December 14, 2023, the Parties met. Riccardi Decl. ¶ 6. Defendant requested and the EEOC granted until January 10, 2024 to provide its discovery responses and production. *Id.* However, on January 5, 2024, LeachGarner's counsel indicated that it would be unable to produce any documents except for payroll data on January 10 and its interrogatory responses would be delayed until January 19, 2024. *Id.* at Ex. F. On January 10, 2024, LeachGarner provided its response to the EEOC's Requests for Production, but failed to provide the data that it had previously represented that it would provide. On January 19, 2024, LeachGarner served largely deficient and incomplete interrogatory responses that referenced production of materials that were neither sepcified nor provided. *See id.*

On January 22, 2024, the Parties met and conferred regarding these deficiencies. At that meeting, LeachGarner's counsel represented that they would respond to the EEOC's concerns about the discovery responses by February 5, 2024. *See id.* Ex. K. Defendant also represented that it had documents in their possession that it would produce in PDF format by January 24, 2024—with the agreement that it would produce these documents at a later date in Relativity-complaint format as requested the EEOC once LeachGarner obtained a vendor to facilitate document production. *Id.* The following day, January 23, 2024, LeachGarner clarified that it had "over 1,000" documents, had just obtained a vendor, and now refused to make a duplicate production in PDF format as they previously agreed. *Id.* Ex. M. The EEOC asked for a date by which the documents could be produced. *Id.* Ex. N. LeachGarner never responded to the EEOC's request for a date when it would produce the documents and, to date, this question remains unanswered. *Id.* ¶ 14.

On January 24, 2024, LeachGarner produced LG00001, an Excel spreadsheet that its

6

counsel represented was the payroll data responsive to the EEOC's Request for Production 20 for the period from 2017-2023. On January 25, 2024, the EEOC notified LeachGarner that the spreadsheet did not contain all the information requested in Request for Production 20 and requested to meet and confer about the deficiencies in the data. On February 5, 2024, LeachGarner's counsel responded to that email, promised additional data and said said "[w]e are working the remaining items and will have an update later today." *Id.* Ex.O. They did not have any update later that day.

Although LeachGarner's counsel produced another, incomplete, Excel spreadsheet, notified the EEOC that LeachGarner would withdraw its Tenth Affirmative Defense, and provided revised search terms pursuant to the Parties' ESI Protocol, it has not provided any update on when it would produce the "over 1,000" responsive documents in its possession or whether it would cure the deficiencies in its Responses to the Requests for Production and Interrogatories.

## II.     ARGUMENT

Federal Rule of Civil Procedure 26 articulates a liberal standard governing the scope of discovery; the rule permits parties to discover all information that is "relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Rule 26 makes clear that "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." *Id.* "As a general matter, relevancy must be broadly construed at the discovery stage such that information is discoverable if there is any possibility it might be relevant to the subject matter of the action." *EEOC v. Electro-Term, Inc.,* 167 F.R.D. 344, 346 (D. Mass. 1996). Discovery serves important purposes, including avoiding surprise, fully disclosing the nature and scope of the controversy, narrowing, simplifying and framing the issues involved, and enabling the parties to obtain the factual information needed to prepare for trial. Rules governing discovery should be interpreted broadly to achieve those purposes. *See Johnson v. H.K. Webster, Inc.,* 775

F.2d 1, 7 (1st Cir. 1985).

Moreover, "[i]n employment discrimination cases, the discovery allowed is even more broad, '[b]ecause employers rarely leave a paper trail-or "smoking gun"—attesting to a discriminatory intent, [therefore] disparate treatment plaintiffs often must build their cases from pieces of circumstantial evidence.'" *Vazquez-Fernandez v. Cambridge Coll., Inc.*, 269 F.R.D. 150, 155 (D.P.R. 2010) (citing *Hollander v. American Cyanamid Co.*, 895 F.2d 80, 85 (2d Cir.1990)); *see, also, Wards Cove Packing Co., Inc. v. Antonio,* 490 U.S. 642, 657 (1989) (plaintiffs in employment discrimination cases are entitled to "broad access to employer's records in an effort to document their claims"); *Gomez v. Martin Marietta Corp.,* 50 F.3d 1511, 1520 (10th Cir. 1995); *Finch v. Hercules, Inc.,* 149 F.R.D. 60, 62 (D. Del. 1993) ("[T]he necessity for liberal discovery to clarify the complex issues encountered in litigation seeking to redress employment discrimination has been widely recognized."); F*lanagan v. Travelers Ins. Co.,* 111 F.R.D. 42, 45 (W.D.N.Y. 1986) (courts should avoid imposing unnecessary limits on discovery in employment discrimination cases).

As the Supreme Court noted with approval, in cases where EEOC is plaintiff, the courts have "afforded the Commission access to virtually any material that might cast light on the allegations against the employer." *EEOC v. Shell Oil Co.,* 466 U.S. 54, 58 (1984).

A. **The Court Should Order LeachGarner to Produce the "More than 1,000" Files in its Counsel's Possession**

LeachGarner is, without any justification, currently withholding over 1,000 responsive documents from the EEOC that they have raised no objection to producing. LeachGarner's counsel has represented that they currently have "more than 1,000" responsive files in their possession for which they have no objection to producing. Riccardi Decl. Ex. M. Further, Defendant has indicated that they now have the capacity to produce these documents in the proper format. *Id.* Nonetheless, more than two weeks later, LeachGarner has not even provided a date by which these documents

can be produced.

### B. The Court Should Put No Weight in LeachGarner's Boilerplate Objections

All of LeachGarner's objections to the Requests for Production and Interrogatories are boilerplate objections that do not satisfy the requirements of Fed. R. Civ. P 33(b)(4), 34(b)(2)(B) and Local Rules 33(c)(1) and 34.1(c)(1) that objections be stated with specificity. Other than its objections based on privilege, which are not the subject of this motion,[4] the most fulsome of LeachGarner's objections simply state "Defendant objects to this request as overly broad, unduly burdensome, not proportional to the needs of the case, and unlikely to lead to information relevant to either party's claims or defense." *E.g.* Riccardi Decl. Exhibit G at ¶¶ 5-7, 10, 22. 29. Because these boilerplate objections fail to comply with the requirements of the Federal Rules, they should carry no weight. *See Leibovitz v. City of New York*, No. 15- CIV-546-LGS-HBP, 2017 WL 462515, at *2 (S.D.N.Y. Feb. 3, 2017) ("The City lists general, boilerplate objections to each of plaintiff's requests for production. Because such objections violate Fed. R. Civ. P. 34(b)(2)(B), they are stricken."). Additionally, every single objection to the EEOC's document requests violates Rule 34(b)(2)(C) because LeachGarrner's responses fail to indicate whether responsive documents are being withheld on the basis of the asserted objection.

### C. The EEOC is Entitled to Discovery from Before January 1, 2017

#### 1. The Presumptively Relevant Time Period for Discovery Begins in 2015

The EEOC is entitled to discovery prior to the first date of discrimination alleged in the complaint. *See Briddell v. Saint Gobain Abrasives Inc.*, 233 F.R.D. 57, 60 (D. Mass. 2005) (providing that an employer's past practices can manifest a pattern of discriminatory behavior and

---

[5] As referenced in further detail in below LeachGarner was the subject of an audit by the Department of Labor's Office of Federal Contract Compliance ("OFCCP"). That audit concluded prior to 2015 and found that LeachGarner discriminated against its female utility operators regarding pay. LeachGarner's general employment and pay practices both during OCCP's investigation and subsequent to a finding of discrimination, are relevant in the instant case.

is therefore relevant to a discrimination claim). In the EEOC's first set of requests for documents and first set of interrogatories, the default time period for each request was from January 1, 2015, to the present and some requests sought documents from an earlier period. Riccardi Decl. Ex. A at ¶ 14 ("Unless otherwise indicated in the text, these requests refer to the relevant time period from January 1, 2015 to present").[5] Without a proper basis, LeachGarner unilaterally refused to search for or produce responsive documents or respond fully to interrogatories that fall outside unspecified dates between the years 2017 and 2023.

It is well established that in employment discrimination cases, plaintiffs are entitled to discovery of an employers' records from time periods before the discriminatory practice alleged in the complaint because they are relevant to the issue of whether there is a pattern of discrimination. *E.g. Jackson v. Harvard Univ.*, 111 F.R.D. 472, 475 (D. Mass. 1986) (noting that "a time frame which merely brackets the contested employment action would foreclose plaintiff from elucidating past practices or identifying a pattern"). In *Morgan v. Nat'l RR Passenger Corp.*, the Supreme Court explained that a plaintiff may use "prior acts" that are time-barred "as background evidence in support of a timely claim." 536 U.S. 101, 113 (2002). Thus, evidence of LeachGarner's actions even before January 1, 2017—the first date of discrimination complained of in the complaint—is relevant to the EEOC's claims that LeachGarner has engaged in a pattern or practice of discrimination against its female employees. *See Chin v. Port Auth. of New York & New Jersey*, 685 F.3d 135, 150 (2d Cir. 2012) (holding that statistical analysis of data from years before the limitation period in employment discrimination case was properly admitted at trial).

Indeed, "[a]lthough courts have permitted discovery periods as long as eight to ten years

---

[5] As referenced in further detail in below LeachGarner was the subject of an audit by the Department of Labor's Office of Federal Contract Compliance ("OFCCP"). That audit concluded prior to 2015 and found that LeachGarner discriminated against its female utility operators regarding pay. LeachGarner's general employment and pay practices both during OCCP's investigation and subsequent to a finding of discrimination, are relevant in the instant case.

[before the claim of discrimination], the norm in employment discrimination cases seems to be anywhere between three and five years." *Briddell.*, 233 F.R.D. at 60; *see, also, Brown v. Wal-Mart Assocs., Inc.*, 616 F. Supp. 3d 137, 144 (D. Mass. 2022) (ordering discovery on comparators from more than three years prior to plaintiff's termination); *Miller v. Hygrade Food Prods. Corp.*, 89 F. Supp.2d 643, 657 (E.D.Pa.2000) (collecting cases); *Cormier v. PPG Indus.*, 452 F.Supp. 594 (W.D. La. 1978) (five years); *Georgia Power Co. v. E.E.O.C,* 295 F.Supp. 950, 954 (N.D. Ga. 1968), *aff'd*, 412 F.2d 462 (5th Cir.1969) (allowing discovery up to five years prior to the date of the alleged discriminatory act); *James v. Newspaper Agency Corp.*, 591 F.2d 579 (10th Cir. 1979) (five years); *Lyoch v. Anheuser--Busch Co.*, 164 F.R.D. 62, 67 (E.D.Mo. 1995) (four years); *E.E.O.C. v. Kan City S. Ry.*,195 F.R.D. 678, 679 (D.Kan. 2000) (three years prior to the time the discriminatory conduct was alleged to have occurred). With only a few exceptions discussed below, the EEOC seeks discovery for the period beginning, January 1, 2015—only two years before the first date of violation alleged in the complaint. This relatively short period of time before the events alleged in the complaint is well within the heartland of the discovery that courts require in employment discrimination cases.

### 2. The EEOC is Entitled to Documents Created Before January 1, 2015 in Response to Requests No. 7, 9, and 31

In addition to producing discovery for the entire relevant time period, LeachGarner should be compelled to produce documents from even before January 1, 2015, in response to EEOC's Requests Nos. 7, 9, and 31 because they are, nonetheless, relevant to the claims and defenses in this action. Requests Nos. 7 and 9 seek documents related to the creation of the job descriptions that are, or were, in use at LeachGarner since January 2015, but which may have been created or sent prior to 2015. LeachGarner has asserted that it has a multiplicity of different jobs at the Attleboro facility, each with its own unique set of qualifications and effort required; and that these differences justify the pay differences observed between men and women. See ECF No.17 at 8

("Because of the large number of distinct manufacturing roles at LeachGarner and the few employees in each role (explained in section III above), liability issues will concern whether different work, qualifications, working environment, and pay are different or appropriate between the different roles."). The evidence that LeachGarner relied on to create these "distinct manufacturing roles" is plainly relevant to evaluate the defense that real differences between jobs, rather than the sex of the worker, drive the pay disparity. Given that the EEOC is seeking this information only for job descriptions that are or were in use during the relevant time period, the documents are unquestionably relevant even if the roles were originally created before 2015.

The EEOC, in Request No. 31 seeks documents that LeachGarner provided to the Department of Labor's Office of Federal Contract Compliance ("OFCCP"), when it was the subject of an audit. In that audit, OFCCP found that LeachGarner discriminated against its female utility operators regarding pay. In January 2017, LeachGarner's attorney claimed to the EEOC that the underlying focus of the EEOC's investigation was "near identical" to this audit and suggested that LeachGarner's responses to the OFCCP Notice of Violation ("NOV") would provide the EEOC information about the company's position toward the EEOC's investigation. Riccardi Decl, Exhibit L. The positions that LeachGarner took during the OFCCP audit and the admissions it made are, thus, relevant to assessing the defenses it raises in this "near identical" lawsuit.

### D. The EEOC is Entitled to Discovery Through the Present.

LeachGarner is arbitrarily withholding documents and information created after August 2023,[6] even though the EEOC alleges an ongoing pattern or practice of discrimination. At the January 22, 2024, meet and confer, LeachGarner justified its withholding of discovery material because, it argued, the EEOC could not seek relief for any discriminatory practices after the end of

---

[6] LeachGarner's discovery responses are vague as to what date in 2023 they intend to stop searching for and producing discovery. However, the last date for which payroll data was provided in LG000001 is August 20, 2023.

the EEOC's pre-suit conciliation period, which ended on February 8, 2023. According to LeachGarner, the EEOC could not pursue any claim of discrimination after February 8, 2023, because LeachGarner did not have the opportunity to conciliate such claims. This argument is really a challenge to the legal viability of part of the claims set forth in the EEOC's complaint rather than a justification to withhold discovery. If LeachGarner took issue with the legal validity of this part of the EEOC's legal claims and wanted to withhold discovery on that basis, it should have raised that objection in a motion under Fed. R. Civ. P 12. Since the claims remain in the complaint, the only question at this juncture is whether the requested documents are relevant to those claims. They plainly are, and so they are discoverable under Rule 26(b)(1).

Additionally, LeachGarner's argument has no basis in law and is at odds with the plain import of Supreme Court precedent and Congress' statutory design. LeachGarner's interpretation of the statutory requirement that the EEOC attempt conciliation before filing suit prevents the EEOC from pursuing claims for discrimination after the conciliation period would preclude the EEOC from ever effectively addressing ongoing discrimination. For example, without access to discovery regarding ongoing discrimination, the EEOC would be unable to pursue injunctive relief because such relief requires demonstrating that there is a reasonable likelihood of the discriminatory practice occurring or recurring in the future. *See e.g. EEOC* v. *KarenKim, Inc.*, 698 F.3d 92, 100 (2d Cir. 2012).

There is nothing in the administrative prerequisites to suit or the Supreme Court caselaw interpreting those prerequisites that precludes or is intended to preclude the EEOC from addressing ongoing discrimination or from obtaining injunctive relief. As the Supreme Court explained in *EEOC v. Mach Mining*, 575 U.S. 480, 494 (2015), the EEOC satisfies its conciliation obligation when it "inform[s] the employer about the specific allegation, as the Commission typically does in a letter announcing its determination of 'reasonable cause[]'" and "describes both what the

13

employer has done and which employees (or what class of employees) have suffered as a result." There is no dispute that the EEOC satisfied this condition here: in its Letter of Determination it notified LeachGarner of the specific allegation – an ongoing pattern or practice of discriminatory pay and job segregation on the basis of sex—and the class of employees suffering – female production employees at LeachGarner's Attleboro facility.

Thus, even if LeachGarner were to pursue this argument, there would be no justification to withhold discovery from after August 2023.

### E. LeachGarner Should Be Compelled to Produce Documents in Response to Request For Production No. 29

The EEOC's Request No. 29 seeks documents that describe the use of the machines that are used in the production process at the Attleboro facility, such as user's manuals and materials used to train workers on the machines' use. LeachGarner refuses to produce these documents based on vague boilerplate objections that do not meet the specificity required in Rule 32(b)(2)(B). As explained above, one of the central issues in this case is what the actual qualifications and working conditions are like for the production workers in different job titlesat LeachGarner's Attleboro facility. Documents like those requested in Request number 29 that identify the machines used and that explain how they are used are directly relevant to the qualifications and working conditions of the employees that operate those machines. Because these documents are relevant and proportional to the needs of the case, LeachGarner should be compelled to produce them.

### F. LeachGarner Should Be Compelled to Answer Interrogatories 2, 5, and 9

Interrogatories Nos. 2, 5, and 9 seek information that LeachGarner concedes is relevant and that LeachGarner has already agreed to produce. Nonetheless, following the pattern of its behavior throughout this case of repeatedly failing to comply with deadlines, LeachGarner has failed to provide the interrogatory answers despite having had nearly 90 days to provide the answers. These interrogatories all seek plainly relevant information: Interrogatory 2 seeks a description of

LeachGarner's organizational structure; Interrogatory 5 seeks a description of LeachGarner's hiring process, including its process for setting pay; and Interrogatory 9 seeks a list of all the staffing agencies from which LeachGarner obtains its employees. In its Interrogatory responses LeachGarner concedes that these interrogatories are relevant and that this information should be produced. *See* Riccardi Decl. Ex. I at 2, 5, and 9. LeachGarner has provided no reason why they should not be compelled to answer these interrogatories but they have not indicated when they will provide this information.

### G. LeachGarner Must Update Its Answers to Interrogatories 6, and 7

LeachGarner responded to the EEOC's interrogatories 6 and 7 with a promise of documents in lieu of Interrogatory answers pursuant to Fed. R. Civ. P. 33(d), but LeachGarner failed to provide the documents and its responses do not comply with the Rule or with Local Rule 33.1(b). Interrogatory 6 seeks information about each of LeachGarner's production job titles and Interrogatory 7 seeks a description of all of the factors other than sex that were used by LeachGarner to set pay. Rule 33(d) gives a party the option of producing records instead of answering an interrogatory, but only when it "[s]pecif[ies] the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could." Local Rule 33.1(b)(4) also requires that, when a party utilizes this option, "the documents shall be made available for inspection and copying within 14 days after service or at a date agreed upon by the parties."

LeachGarner's responses to Interrogatories Nos. 6 and 7 failed to comply with the requirements of these Rules because they failed to specify which documents are responsive to the Interrogatories and did not provide the documents within 14 days. When a party relies on Rule 33(d) rather than answering an interrogatory it "must satisfy four criteria: (1) it must affirm that the information sought by the requesting party is in fact in the specified records; (2) it must specify the

15

actual documents where information will be found; (3) it must show that answering the interrogatory in the conventional manner would impose a burden on it; and (4) it must show that the burden of deriving the answer from the specified records will be substantially the same for both parties." *United States ex rel. Martino-Fleming v. S. Bay Mental Health Ctr., Inc.*, 332 F.R.D. 1, 6 (D. Mass. 2019). LeachGarner claims in its response to Interrogatory 6 that the information sought about job titles was produced in the data produced in response to Request for Production 20, but, as explained above, that data did not contain any information about job titles. And the response to Interrogatory Number 7 does not provide any specification of the documents that contain the requested information.

### H. The EEOC Should Be Awarded Reasonable Costs for Making This Motion to Compel

Pursuant to Fed. R. Civ. P. 37(a)(5)(A), when a motion to compel is granted—or if the discovery is provided after the motion filed—the court must order the resisting party to pay the moving party's reasonable attorney's fees unless the refusal to grant the discovery was substantially justified or the moving party failed to attempt "in good faith to obtain the disclosure or discovery without court action." None of LeachGarner's failures to provide the requested discovery were substantially justified. There is no justification for failing to comply with self-imposed deadlines or failing to communicate with opposing counsel regarding when discovery will be produced. *See DiLeo v. United Rentals (N. Am.), Inc.*, No. 15-CV-40157-TSH, 2018 WL 3352967, at *3 (D. Mass. July 9, 2018) (awarding attorney fees for motion to compel when party failed to meet "extended deadlines that they themselves had proposed."). Nor are any of LeachGarner's objections to the timeframes or relevance of the discovery requests substantially justified.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that this Court enter an

ORDER requiring Defendant LeachGarner to produce the following materials within 7 days:

(1) All of the responsive documents in LeachGarner's counsel's possession within 7 days; and

(2) Revised responses to Interrogatories 2, 5, 6, 7, and 9.

For the reasons set forth above Plaintiff respectfully requests that this Court enter an ORDER requiring Defendant LeachGarner to produce the following materials within 21 days;

(1) All documents responsive to the EEOC's Requests for Production from the period January 1, 2015 until January 1, 2017 and from August 20, 2023 to the present;

(2) All documents responsive to the EEOC's Requests for Production 7, 9, and 31 whenever they were created; and

(3) All documents responsive to the EEOC's Request for Production 29.

For the reasons set forth above Plaintiff respectfully requests that this Court enter an ORDER requiring Defendant LeachGarner to pay Plaintiff's cost for making this motion, including reasonable attorney fees and extending all discovery deadlines in the scheduling order by three months.

Dated: February 8, 2024

Respectfully submitted,

Respectfully submitted,

*/s/ Sebastian Riccardi*
SEBASTIAN RICCARDI
Senior Trial Attorney

*/s/ Annette M. Lalic*
ANNETTE M. LALIC
Trial Attorney

U.S. Equal Employment Opportunity Commission
New York District Office

17

33 Whitehall St., 5th Floor
New York, NY 10004-2112
Telephone No.: 929-506-5340
Email:  sebastian.riccardi@eeoc.gov
             Annette.lalic@eeoc.gov

## CERTIFICATE OF SERVICE

      I hereby certify that on February 7, 2024 I electronically filed the foregoing with the Clerk of the District Court using its CM/ECF system, which then electronically notified all those registered as CM/ECF participants in this case.

                                                          /s/ *Sebastian Riccardi*
                                                           Sebastian Riccardi