UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION<br><br>       Plaintiff,<br><br>v.<br><br>LEACHGARNER, INC. d/b/a "LEACHGARNER, A BERKSHIRE HATHAWAY COMPANY,<br><br>       Defendant. | Civil Action No. 1:23-cv-11014-JEK-JCB<br>**LEAVE TO FILE GRANTED:**<br> March 1, 2023 |

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL DEFENDANT LEACH GARNER, INC. TO <u>PRODUCE DISCOVERY</u>**

Three months after Plaintiff Equal Employment Opportunity Commission ("EEOC") served discovery requests, it had received only two documents, despite repeated commitments from Defendant LeachGarner, Inc. ("LeachGarner") to produce them. In addition, LeachGraner produced incomplete interrogatory responses and raised baseless objections to certain document requests. After multiple meetings pursuant to Local Rule 37.1, LeachGarner promised to update the EEOC regarding its positions on open issues by February 5, 2024. Following a long-established pattern, LeachGarner failed to provide the promised update nor produced the documents it had promised, necessitating the EEOC to file this motion to compel.

Approximately two weeks after this motion was filed, LeachGarner finally produced the documents that it had promised to produce by January 10, 2024 and withdrew some of its objections to requests for document production. However, it never supplemented its interrogatory responses and maintains its objections to crucial document requests.

1

## ARGUMENT

### A. The EEOC Withdraws the Motion Compel As to The Documents that were Produced and LeachGarner's Objections To Requests for Production 29 and 31

The EEOC withdraws the portion of its motion that sought production of the "more than 1,000" files that LeachGarner's counsel represented it had in its possession as moot. On February 21, 2024, LeachGarner produced 661 documents to the EEOC without specifying what they were or updating their Responses to the EEOC's Requests for Production. In its opposition, LeachGarner represents that these are the more than 1,000 documents referred in its January 23, 2024 email.

The EEOC also withdraws the portion of its motion seeking to overrule LeachGarner's objections as to the EEOC's Requests for Production No. 31, because LeachGarner has withdrawn its objections and committed to search and produce responsive documents. The EEOC also withdraws its motion as to Request for Production No. 29 in light of LeachGarner's concession in its opposition to produce training documents.[1]

### B. The EEOC Has Met Its Obligations Under Local Rule 37.1 to Meet and Confer

As set forthin more detail in the uncontroverted declaration of Sebastian Riccardi submitted in support of the motion to compel, the EEOC met and conferred with LeachGarner multiple times to narrow or resolve the issues in this motion and gave LeachGarner all of the time it asked for to provide documents and provide its position with regard to the EEOC's criticisms of its discovery responses. The EEOC met with LeachGarner three times in an attempt to obtain the documents that were originally sought in this motion and gave LeachGarner all the time that it asked for to produce them. Three times LeachGarner failed to produce the documents when promised and failed to keep the EEOC apprised of its efforts to produce them. The most recent time that the EEOC met and

---

[1] On February 27, 2024, the EEOC met and conferred with LeachGarner to clarify its representation in its opposition because the EEOC wants to ensure that it also obtains documents sufficient to show the make and model of each machine used by production workers. LeachGarner committed to informing the EEOC whether it would search for and produce such documents by March 4, 2024. Given that the parties are not at impasse on this issue, the EEOC withdraws the motion in his respect, without prejudice to moving to compel at a later date.

2

conferred was on January 22, 2024, when all the issues raised in this motion were discussed. However, consistent with its behavior throughout discovery, LeachGarner failed to meet the deadlines it chose and then refused to communicate with the EEOC to resolve the issue when it was in default of its obligations. *See, e.g.,* Riccardi Decl. PP 16-18. Contrary to LeachGarner's claim that the EEOC filed this motion prematurely due to "combative approach and unrealistic discovery demands," ECF No. 31 at 6, the EEOC filed this motion three months after it served its discovery demands, only after having only received two documents after numerous attempts to meet and confer.

This motion was filed only after LeachGarner had missed multiple self-imposed deadlines, more than 48 hours after LeachGarner's latest deadline, and after it refused to provide the EEOC with any update as to why it missed this deadline or when the EEOC could expect the documents or answers to the outstanding issues from the parties' January 22, 2024 meet and confer. LeachGarner claims that "[h]ad the EEOC engaged with LeachGarner regarding these issues rather than rushing to file a motion to compel, LeachGarner is confident these issues could have been resolved without requiring intervention from the Court." *Id.* at 7. But. The real onus here is on LeachGarner, had it adhered to its own self-imposed deadlines or communicated with the EEOC, then these withdrawn portions of the motion could have been avoided.

C. **The Motion to Compel Responses to the Interrogatories Is Not Moot**

LeachGarner claims that the EEOC's motion to provide proper responses is moot because it does not object to providing the responses. But LeachGarner still has not supplemented these interrogatory responses even after LeachGarner has produced documents—it has not supplemented the responses nor stated when they would respond. Accordingly, the EEOC still seeks an order compelling LeachGarner to supplement its responses to Interrogatories 2, 5, 6, 7, and 9.

LeachGarner complains that it cannot be expected to actually answer interrogatory 2—

about its organizational structure during the relevant time period—interrogatory 5—relating to the process for filling its production positions,and interrogatory 9—listing the employment agencies it has used to fill its production positions—because it requires more time to investigate these issues to provide answers. However, these are aspects of LeachGarner's own business which were already subjects of the EEOC's investigation. Moreover, it has already had almost 120 days to investigate and gather this information. LeachGarner is simply delaying.

      LeachGarner also fails to address the deficiencies in its invocation of Fed. R. Civ. P. 33(d) in its responses to Interrogatories 6 and 7. When a party relies on Rule 33(d) rather than answering an interrogatory, it "must satisfy four criteria: (1) it must affirm that the information sought by the requesting party is in fact in the specified records; (2) it must specify the actual documents where information will be found; (3) it must show that answering the interrogatory in the conventional manner would impose a burden on it; and (4) it must show that the burden of deriving the answer from the specified records will be substantially the same for both parties." *United States ex rel. Martino-Fleming v. S. Bay Mental Health Ctr., Inc.*, 332 F.R.D. 1, 6 (D. Mass. 2019). Even after finally producing documents on February 21, 2024, LeachGarner has failed to update its interrogatory response to indicate which documents contain the information responsive to the interrogatories, let alone to demonstrate that the burden of deriving the answer from the specified records will be substantially the same for both parties.

      LeachGarner suggests that it could have satisfied Local Rule 33.1 by agreeing upon service of the documents to which the interrogatory refers "at a date agreed upon by the parties," but for the EEOC's intransigence. *See* ECF No. 31 at 10 n. 7. But at no time has LeachGarner proposed a date by which it would produce these documents or supplement its interrogatory responses and even now provides no date when it can. The EEOC has accommodated LeachGarner's numerous requests for extensions of its deadline to produce documents and there is no reason to think that the

EEOC would not have accepted any reasonable date certain by which it would receive these documents or supplemental interrogatory responses. However, LeachGarner has never proposed such a date certain and prefers to indefinitely defer compliance with its discovery obligations.

### D. The EEOC is Entitled to Discovery from Before January 1, 2017

LeachGarner argues that, because the EEOC is not seeking relief for any claimants prior to January 2017, any documents or information that fall outside that period are categorically irrelevant. ECF No. 31 at 11. LeachGarner's argument here is an *ipse dixit* that runs contrary to Supreme Court precedent. There are unquestionably facts about LeachGarner's pay practices and production process that may have occurred before 2017 that are relevant to the issues in this case. For example, in its February 21, 2024, document production, LeachGarner produced a job description in use during the relevant time period that had last been revised on August 8, 2016. The documents that were used to create this revised job description are relevant notwithstanding the fact that they pre-date the initial date stated in the complaint.

LeachGarner's argument also has no basis in law. The Supreme Court, in *Morgan v. Nat'l RR Passenger Corp.*, held that Title VII's 300-day statute of limitations does not prevent the introduction of older evidence in support of a timely claim. 536 U.S. 101, 113 (2002). It is well established that employment discrimination plaintiffs are entitled to discovery of an employer's records from time periods before the discriminatory practice alleged in the complaint because they are relevant to the issue of whether there is a pattern of discrimination. *See* ECF No. 30 at 11 (and the caselaw cited therein). Courts generally allow plaintiffs to obtain discovery, "anywhere between three and five years" prior to the allegation of discrimination. *Briddell v. Saint Gobain Abrasives, Inc.*, 233 F.R.D. 57, 60 (D. Mass. 2005).

The EEOC's proposed default date of January 1, 2015, falling two years before the first date for which it is seeking relief, is a reasonable compromise. LeachGarner alleges – without

providing any evidence whatsoever—that searching for and producing documents from as far back as 2015 would be unduly burdensome. "Boilerplate language that discovery is 'overbroad and unduly burdensome' is insufficient to meet the 'burden of showing by affidavit or otherwise that [discovery] would be unduly burdensome.'" *Katz v. Liberty Power Corp.*, LLC, No. 18-CV-10506-ADB, 2020 WL 3492469, at *5 (D. Mass. June 26, 2020). For many of the discovery requests, this time frame would be a minimal added burden if any. For example, LeachGarner already represented to the EEOC that it was preserving and collecting ESI going as far back as January 1, 2015. And, with respect to data like the pay information that is critical in this case, the information is available through querying the database in the same manner as data it has already agreed to produce.

1. **The EEOC's Request for Documents Created Before the Relevant Time Period in Response to Requests No. 7 and 9 is Not Overbroad, Unduly Burdensome or Disproportionate to the Needs of the Case**

LeachGarner claims that it should not be compelled to produce documents in response to EEOC Requests Nos. 7 and 9, which seek documents that were used to create its job descriptions, created before 2015 because they are "completely unbounded in time." ECF No. 31 at 12. However, neither of these requests is unbounded in time: they only require LeachGarner to search for and produce documents that were used in the creation of the job descriptions that are or were in effect during the relevant time-period. LeachGarner claims that the EEOC's position will force it to search through dusty archives from the firm's founding in 1909. But that is not true. This request simply means that when LeachGarner is not licensed to ignore the job analysis performed in 2014, when it provides the documents that were used to create the job descriptions in effect in 2017. In response to this request, LeachGarner is only obligated to engage in a reasonable search for responsive documents and can always raise an objection of undue burden if there is a specific reason why the search or production process is unduly burdensome. Request No. 9 is even more

bounded: it asks for a specific set of documents that were sent to AIM Consultants in the process creating new job descriptions. LeachGarner's Human Resources Manager informed the EEOC about their use of AIM to create their job descriptions in 2017. While the EEOC does not know when these documents were sent to AIM or when the job descriptions were produced, LeachGarner does.

### E. The EEOC is Entitled to Discovery Through the Present Because it Alleges an Ongoing Pattern or Practice of Discrimination.

The EEOC alleges that LeachGarner continues to discriminate against its female production employees, ECF No. 1 ¶¶ 14-15, and no one disputes that information and documents created after February 8, 2023, are relevant to determining whether LeachGarner has continued to discriminate. Rather, LeachGarner argues that it is entitled to withhold such discovery because it has a defense to claims of discrimination after the end of the conciliation period: namely that Title VII's conciliation requirement prohibits the EEOC from seeking relief for such discrimination. ECF No. 31 at 13 ("EEOC is restricted to seeking liability for claims that occurred prior to its Letter of Determination."). LeachGarner's alleged defense is not a bar to discovery in this case and it also conflicts with Title VII and the Supreme Court's interpretation of the EEOC's conciliation obligations in *EEOC v. Mach Mining*, 575 U.S. 480, 494 (2015).

As an initial matter, even if LeachGarner is correct that the EEOC cannot seek relief for discrimination that occurs after the end of the pre-suit conciliation period, this fact would not justify withholding discovery. Rather, this argument would be grounds for a motion under Rule 12—which LeachGarner did not file. Instead, LeachGarner is attempting to obtain summary adjudication of this defense in the context of resisting a discovery motion. A party is not allowed to withhold documents relevant to a claim merely because they claim to have a defense to that claim. *See Metro. Prop. & Cas. Ins. Co. v. Savin Hill Fam. Chiropractic, Inc.*, No. CV 15-12939-

LTS, 2018 WL 11424180, at *2 (D. Mass. Sept. 7, 2018). Because the EEOC's claim that LeachGarner is engaging in ongoing discrimination remains in the complaint, the EEOC is entitled to discovery to pursue that claim.

### 1. Title VII Does Not Prohibit The EEOC from Remedying Ongoing Discrimination

LeachGarner's argument that the EEOC cannot pursue relief for discrimination that occurs after it has issued its Letter of Determination ("LOD") or after the end of conciliation would prevent the EEOC from *ever* pursuing relief for victims of ongoing discrimination.[2] There is nothing in the administrative prerequisites to an EEOC lawsuit that precludes or is intended to preclude the EEOC from addressing ongoing discrimination or from obtaining injunctive relief to prevent an ongoing discriminatory practice. Under Title VII, the EEOC represents the public interest and "bear[s] the primary burden of litigation" to enforce the statute. *Gen. Tel. Co. of the Nw. v. Equal Emp. Opportunity Comm'n*, 446 U.S. 318, 326 (1980). Prior to initiating litigation, the EEOC "must first 'endeavor to eliminate [the] alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion.'" *Mach Mining*, 575 U.S. at 483 (quoting 42 U.S.C. § 2000e-5(b)). Only if these conciliation efforts do not result in an "agreement acceptable to the Commission itself" can the EEOC file a lawsuit. *Id.* at 483-84 (internal quotations omitted). But nothing in the statute or *Mach Mining* requires the EEOC to notify an employer about the details of every individual's claims to relief, as LeachGarner contends. Rather, as the Supreme Court made clear in *Mach Mining*, the EEOC may pursue this conciliation obligation on a class-wide basis focusing on the employer's conduct and the class of people harmed, rather than by listing each individual harmed. *Mach Mining,* 575 U.S. at 488 (holding that "the EEOC, to meet the statutory

---

[2] LeachGarner implies that the claims of ongoing discrimination mostly involve new claimants hired after February 2023, but, really. it is mostl likely to involve the same women in LeachGarner's workforce who continue to be underpaid relative to their male counterparts.

condition, must tell the employer about the claim—essentially, what *practice* has harmed which person or *class*—and must provide the employer with an opportunity to discuss the matter in an effort to achieve voluntary compliance.") (emphasis added). As long as the EEOC has identified the class affected by the employer's unlawful discriminatory practice, it has fulfilled its conciliation obligation. *Id.* at 494 (explaining that the EEOC adequately provides an employer notice of discrimination when it issues an LOD that "properly describes both what the employer has done and which employees (*or what class of employees*) have suffered as a result.") (emphasis added).

There is no dispute that the EEOC, in its LOD, told LeachGarner that it was harming the class of its female production employees at its Attleboro facility through an *ongoing* pattern or practice of discrimination. There is also no dispute that the EEOC gave LeachGarner the opportunity to discuss the matter and achieve voluntary compliance with Title VII, but that no such agreement was reached. This attempt satisfied the EEOC's conciliation obligations and there is, thus, no bar to pursuing relief for LeachGarner's ongoing pattern or practice of discrimination.

Notwithstanding the fact that the EEOC attempted to conciliate its claims that LeachGarner engaged in an ongoing pattern or practice of discrimination against the women at its Attleboro facility before filing suit, LeachGarner claims that the EEOC cannot seek relief for violations of Title VII that occurred after the conciliation period because the EEOC could not have known about claims that happened after the LOD. But this claim conflicts with the structure of Title VII which makes the EEOC the primary enforcer of Title VII and would lead to the absurd result of preventing EEOC from ever preventing ongoing discrimination. In support of its argument, LeachGarner relies almost exclusively on cases that pre-date *Mach Mining* and whose reasoning was rejected by the Supreme Court. In *Mach Mining*, the Supreme Court made clear that the EEOC could pursue conciliation on behalf of a class of employees affected by the discriminatory

9

practice identified in its LOD. *Arizona ex rel. Horne v. Geo Grp., Inc.*, 816 F.3d 1189, 1200 (9th Cir. 2016) ("The Supreme Court [in *Mach Mining*] did not articulate any further requirement of individual conciliation prior to bringing a lawsuit on behalf of a class of individuals."). This holding rejected the reasoning of earlier lower court decisions the LeachGarner relies on like *EEOC v. CRST Van Expedited, Inc.*, 679 F.3d 657 (8th Cir. 2012).

In *CRST* the EEOC sued a trucking company for sexual harassment on behalf of a class of aggrieved women. The court of appeals affirmed the dismissal of the claims of 67 of these women because the EEOC failed to conciliate their particular claims due to the fact that they were only identified after discovery. *Id.* at 676. But the Supreme Court rejected the reasoning of *CRST*, by holding that the EEOC may satisfy its obligations by simply identifying the class of aggrieved individuals and rejecting the searching review of conciliation efforts in that case. *Mach Mining*, 575 U.S. at 494. Additionally, the Supreme Court rejected *CRST's* remedy of dismissing claims that had not been conciliated, instead "the appropriate remedy is to order the EEOC to undertake the mandated efforts to obtain voluntary compliance." *Id.* at 495.[3]

Since *Mach Mining* lower courts have also rejected the reasoning of *CRST*. For example, the Ninth Circuit rejected LeachGarner's argument in a well-reasoned opinion in *Geo Grp.*, 816 F.3d at 1199, where the court held that the EEOC could satisfy its conciliation obligations by notifying the employer of the class for whom it sought relief and the court reversed the trial court's exclusion of aggrieved individuals who had been discriminated against after the EEOC

---

[3] Thus, even if LeachGarner were correct that it is entitled to the opportunity to conciliate claims of victims of discrimination after the issuance of the LOD or end of conciliation—and it is not--the only remedy would be to move for a stay to pursue conciliation. And even if *CRST* were still good law regarding EEOC's ability to seek relief for individuals whose claims arose after the LOD and conciliation process—and it is not—*CRST* just addresses EEOC's ability to obtain relief for such individuals. Here, apart from monetary relief, EEOC also seeks a range of injunctive relief designed to prevent future sex discrimination by LeachGarner. *See* Complaint, ECF 1 at 6-7. In order to obtain such injunctive relief, "the moving party must satisfy the Court that relief is needed," such as by a showing of "some cognizable danger of recurrent violation..." *EEOC v. KarenKim,* 698 F.3d 92, 100 (2d Cir. 2012). Obviously, discovery of post-LOD conduct of LeachGarner is squarely relevant to this issue.

issued its Letter of Determination. The Ninth Circuit Court of Appeals held that the EEOC can recover damages on behalf of an aggrieved individual without the filing of a new charge "if her claim is already encompassed within the Reasonable Cause Determination or if the claim is 'like or reasonably related' to the initial charge". *Id.* at 1204-05. Given that the reasonable cause determination in this case found that LeachGarner was engaged in an ongoing pattern or practice of pay discrimination, victims of that same pattern whose damages arose after the issuance of the LOD or failure of conciliation are already encompassed in that determination.

In fact, numerous courts both before and after *Mach Mining* largely rejected LeachGarner's argument because it conflicts with the requirements of Title VII. *See, e.g., Equal Emp. Opportunity Comm'n v. Atl. Capes Fisheries, Inc.*, 284 F. Supp. 3d 133, 134 (D. Mass. 2018) (holding that the EEOC provided adequate notice by identifying class of victims in conciliation); *EEOC v. Bass Pro Outdoor World, LLC*., 826 F.3d 791, 803-06 (5th Cir. 2016) (holding that even if the EEOC did not identify specific victims during conciliation, the EEOC gave the employer the notice required by *Mach Mining* by informing the "about the class it had allegedly discriminated against—African American, Hispanic, and Asian applicants"); *EEOC v. Rhone–Poulenc, Inc.*, 876 F.2d 16, 17 (3d Cir.1989) (stating that the EEOC is not required to provide documentation of attempts to conciliate on behalf of each potential claimant in an employment class action); *EEOC v. Am. Nat'l Bank*, 652 F.2d 1176 (4th Cir. 1981); *EEOC v. Peoplemark*, 732 F.3d 584, 624 (6th Cir. 2013); *EEOC v. United Parcel Serv., Inc.*, 2017 WL 9482105, at *8 (E.D.N.Y. March 9, 2017); *EEOC v. United Health Programs*, 213 F.Supp.3d 377, 404 (E.D.N.Y. 2016) (declining to dismiss EEOC claims for aggrieved individuals who were discovered only after litigation commenced); *EEOC v. Evans Fruit Co., Inc.*, 872 F.Supp.2d 1107, 1111 (E.D. Wash. 2012) (holding that the court was "not persuaded . . . that the EEOC must specifically identify, investigate and conciliate each alleged victim of discrimination before filing suit");

*EEOC v. Custom Companies, Inc.*, 2004 WL 765891, at *12 (N.D. Ill. Apr. 7, 2004) (rejecting employer's effort, in Title VII class action brought by EEOC, to close class period as of the date of initial charging party's complaint.).

The only post-*Mach Mining* case that supports LeachGarner's position is a short unpublished decision in *EEOC v. Bass Pro Outdoor World, LLC (Bass Pro III)*, 2017 US LEXIS 495, January 3, 2017 (S.D. Tex.). That decision disregards the Supreme Court's *Mach Mining* decision—which it does not even cite— and the Fifth Circuit Court of Appeals' decision in *Bass Pro* itself. The entirety of the *Bass Pro III* decision's reasoning is to cite its earlier (pre-appeal pre-*Mach Mining*) decision *EEOC v. Bass Pro Outdoor World, LLC (Bass Pro I)*, 1 F.Supp.3d 647 (S.D. Tex. 2014). There, the court held that the EEOC failed to fulfill its conciliation obligations by only providing a description of the class of aggrieved individuals without providing any information about specific individuals or the statistical analysis that supported its decision. *Id.* at 663. The *Bass Pro I* decision's searching review of the EEOC's conciliation and detailed notice requirements has been disavowed by the Supreme Court and the prior cases that it relied on were overruled by *Mach Mining*.

Indeed, LeachGarner flatly misrepresents the decision in *Equal Emp. Opportunity Comm'n v. United Parcel Serv.*, No. 15CV4141MKBCLP, 2017 WL 2829513, at *10 (E.D.N.Y. June 29, 2017). There the court *granted* the EEOC's motion to strike the exact same defense that the LeachGarner seeks to raise here. In *UPS,* the EEOC had asserted that UPS's application of its grooming standards discriminated against a class of applicants or employees who were Muslim, Rastafarian, Native American, fundamentalist Christian, Sikh, Orthodox Jew, Buddhist, and others on the basis of their religion. *Id.* The court held that the EEOC had satisfied its conciliation obligations because it had identified the class affected and made clear that the unlawful discriminatory practice was ongoing. *Id.* It explicitly rejected the LeachGarner's argument here

12

that the EEOC could not pursue relief on behalf of victims of discriminatory conduct that occurred after conciliation. *Id. See also id.* at *18 ("EEOC is permitted to add…claimants…after suit has been filed…").

Because Title VII's conciliation requirements do not prevent the EEOC from seeking relief for victims of ongoing discrimination that continues past the date it issues its LOD and fails conciliation, the EEOC is entitled to seek discovery of information and documents from after February 2023.

### 2. LeachGarner's Alleged Practical Objections to Providing Discovery Through The Present Were Addressed by the Court When it Ordered Bifurcation.

Contrary to LeachGarner's claims, there are no practical problems with the EEOC pursuing relief for ongoing discrimination that justify artificially restricting the discovery period. This case has been bifurcated under the framework *Int'l. Bhd. of Teamsters v. U.S.*, 431 U.S. 324, 360 (1977), and the discovery at issue in this motion relates solely to Phase 1 and, thus, does not implicate the "open-ended class of possible claimants" suggested by LeachGarner. ECF No. 31 at 16. LeachGarner made these same arguments unsuccessfully in opposition to bifurcation when it sought early disclosure of Phase 2 claimants. The Court has already rejected these arguments.

Under the *Teamsters* pattern or practice framework, discovery and trial proceed in two phases: Phase 1, focused on whether unlawful discrimination is the employer's standard operating procedure; and Phase 2, which focuses on whether individual claimants were victims of that pattern or practice of discrimination. *Id.* at 360-362. If a pattern or practice is established at the conclusion of the Phase 1 trial, the court will issue appropriate class-wide injunctive relief to eliminate the practice. *Id.* The issuance of that injunctive relief will end the pattern or practice and also mark the end of the period for which the EEOC can seek relief for Phase 2 claimants. Only after the conclusion of the Phase 1 trial does Phase 2 discovery begin. Thus, contrary to LeachGarner's contentions, the EEOC's claims of ongoing discrimination will not cause practical

issues with Phase 2 discovery.

### F. The EEOC Should Be Awarded Reasonable Costs for Making This Motion

Pursuant to Fed. R. Civ. P. 37(a)(5)(A), requires a court to order the resisting party to pay the moving party's reasonable attorney's fees and costs when a motion to compel is granted even if the discovery is provided after the motion filed, unless the refusal to grant the discovery was substantially justified or the moving party failed to attempt "in good faith to obtain the disclosure or discovery without court action."[4] LeachGarner cannot demonstrate any of these circumstances that would warrant an exception from Rule 37(a)(5)(A)'s requirement that the Court order payment of fees and costs. The EEOC attempted in good faith to resolve these issues without resort to motion practice and met and conferred repeatedly with Defendants' attorneys to resolve these issues without resort to the Court, only for Defendant to repeatedly ignore its own deadlines and obligations of under the Federal and Local Rules. And, when Defendant repeatedly missed its deadlines, the EEOC repeatedly sought clarification, only to be met by an absence of communication.

---

[4] Fed. R. Civ. P. 37(a)(5)(A) reads in its entirety:

*If the Motion Is Granted (or Disclosure or Discovery Is Provided After Filing).* If the motion is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:

(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;

(ii) the opposing party's nondisclosure, response, or objection was substantially justified; or

(iii) other circumstances make an award of expenses unjust.

The fact that LeachGarner finally produced discovery and withdrew frivolous objections in response to the EEOC's motion does not relieve it of its burden to justify its resistance to discovery as substantially justified. LeachGarner provides no substantial justification for resisting discovery. LeachGarner has not identified a single court that has agreed with it that an employment discrimination plaintiff cannot obtain any discovery from the time-period before they are seeking relief and has not articulated any burden in complying with the requests that they claim are unduly burdensome. Although LeachGarner cites one non-overruled case that supports its position that the EEOC cannot seek relief for victims of ongoing discrimination due to Title VII's conciliation provision, it has never moved to dismiss those claims. And it provides no argument why the mere existence of a defense to a claim justifies withholding discovery when that claim remains in the complaint. And its claim that the EEOC brought this motion prematurely is contradicted by the uncontroverted evidence of the EEOC's attempts to resolve these issues without motion practice.

## CONCLUSION

For the reasons set forth above, the motion to compel should be granted.

Dated: March 1, 2024

                                                Respectfully submitted,

*/s/ Sebastian Riccardi*
SEBASTIAN RICCARDI
Senior Trial Attorney

*/s/ Annette M. Lalic*
ANNETTE M. LALIC
Trial Attorney
U.S. Equal Employment Opportunity Commission
New York District Office
33 Whitehall St., 5th Floor
New York, NY 10004-2112
Telephone No.: 929-506-5340
Email:  sebastian.riccardi@eeoc.gov
        Annette.lalic@eeoc.gov.

15

## **CERTIFICATE OF SERVICE**

  I hereby certify that on February 7, 2024 I electronically filed the foregoing with the Clerk of the District Court using its CM/ECF system, which then electronically notified all those registered as CM/ECF participants in this case.

                /s/ *Sebastian Riccardi*
                Sebastian Riccardi